IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-02370-MSK-KLM

ANGELO THOMAS GRUPPO,

       Plaintiff,

v.

FEDEX FREIGHT SYSTEMS, INC.,
TERRY STAMBAUGH, and
STEVE MOORE,

       Defendants.

---

**OPINION AND ORDER DENYING ADDITIONAL COSTS AND GRANTING
MOTION FOR SANCTIONS**

---

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion For Review of the Clerk's Taxation of Costs **(# 159)**, the Plaintiff's response **(# 169)**, and the Defendants's reply **(# 170)**; and the Defendants' Motion for Sanctions **(# 171)**, the Plaintiff's response **(# 173)**, and the Defendants' reply **(# 175)**.

## FACTS

A brief recitation of the procedural history of this case is appropriate. On or about November 1, 2005, the Plaintiff commenced this action in the Colorado District Court for El Paso County. The initial Complaint named, as Defendants, FedEx Freight Systems, Inc., the Plaintiff's former employer, and Douglas Duncan, David Zanca, Terry Stambaugh, Rita Moore, Steve Moore, Sandra Simpson, and Bonita Lucky, all officials of Defendant FedEx. That Complaint asserted eight causes of action, only one of which differentiated among the

1

Defendants: (i) "wrongful termination - specific," which the Court construed as a claim for retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; (ii) breach of contract, relating to the Plaintiff's relocation from Arizona in reliance on oral promises of job security and increased responsibility; (iii) promissory estoppel, on the same factual predicate as the breach of contract claim; (iv) "willful breach of contract," on the same factual predicate as the breach of contract claim; (v) outrageous conduct, asserted as against Steve Moore only, based on his demand that the Plaintiff terminate one of his subordinates; (vi) fraud, on the same factual predicate as the breach of contract claim; (vii) "wrongful termination - general," which the Court construed as a claim for wrongful discharge in violation of public policy under Colorado law; and (viii) defamation, in that "Defendants intentionally made false statements about plaintiff" to others.

On or about November 22, 2005, the Plaintiff filed a Second[1] Amended Complaint which added a ninth claim, sounding in negligence, based on a work-related injury sustained by the Plaintiff. The object of the negligence claim was unclear; in various paragraphs, the Plaintiff referred to "Defendant FedEx" owing a duty to him; an unspecified "Defendant" breaching that duty; and unspecified "Defendants' conduct" that warranted punitive damages.

On November 22, 2005, the Defendants removed (# 1) the action to this Court pursuant to 28 U.S.C. § 1331, based on the Plaintiff's FMLA claim. On December 19, 2005, Defendants Stambaugh, Simpson, Duncan, and Zanca moved to dismiss (# 16) for lack of personal jurisdiction. Separately, Defendants Rita Moore, Steve Moore, Bonita Lucky and FedEx moved

---

[1]On November 21, 2005, the Plaintiff filed an Amended Complaint, which differed from the original Complaint in ways not immediately apparent.

to dismiss **(# 17)** the claims against them for, among other things, failure to state a claim, failure to plead fraud and defamation with particularity, and for prematurely demanding exemplary damages. In addition, these defendants requested sanctions based on the Plaintiff's premature demand for exemplary damages. In response **(# 29)**, the Plaintiff conceded that the exemplary damages demand was premature, and opposed the motions in all other respects.

On April 7, 2006, the Plaintiff stipulated to dismiss **(# 57)** Defendants Zanca and Duncan and Defendants Stambaugh and Simpson withdrew their personal jurisdiction motion in favor of joining in the pending Rule 12(b)(6) motion. In that same stipulation, the Defendants withdrew their request for sanctions based on the Plaintiff's premature exemplary damages claim. On September 6, 2006, the Plaintiff stipulated to dismiss **(# 69)** Defendant Lucky.

On September 12, 2006, the Court granted the Rule 12(b)(6) motion **(# 71),** in part. The Court found that the Plaintiff's fraud claim was fatally deficient, but that the remaining claims were sufficiently pled against each Defendant. At the same time, the Court warned the Plaintiff about what appeared to be "careless, scattershot . . . imprecise or lazy pleading" of each claim against all of the Defendants collectively, when there was reason to suspect that there was no good-faith factual basis to support such assertions under Fed. R. Civ. P. 11(b).

On January 3, 2007, the Plaintiff moved to again amend the complaint **(# 93)**, this time to "withdraw various claims and allegations" and "to narrow[ ] and limit[ ] plaintiff's claims and certain specific defendants against which said claims are sought." The Court granted the motion. The Plaintiff's Third Amended Complaint **(# 96)** clarified that the FMLA claim was asserted against all remaining defendants, omitted the breach of contract claim, clarified that the promissory estoppel and outrageous conduct claims were asserted only against FedEx and Steve

Moore, withdrew the wrongful discharge in violation of public policy claim, and clarified that the negligence claims were asserted only as against FedEx. The caption of the defamation claim alleged that it was asserted against "FedEx Freight and/or unknown employees," but the body of that claim asserted that "Defendants, including, but not necessarily limited to" FedEx, Stambaugh, Steve Moore, and Rita Moore, had defamed him.

On January 12, 2007, the Defendants moved for summary judgment **(# 99)** on all remaining claims. The Plaintiff opposed **(# 104)** the motion in its entirety. On June 29, 2007, the Court granted in part **(# 114)** the summary judgment motion, granting judgment to the Defendants on the promissory estoppel, outrageous conduct, defamation, and negligence claims, leaving only the FMLA claim for trial.

The case proceeded to a jury trial in December 2007. On the first day of trial **(# 145)**, the Plaintiff orally moved to dismiss the claims against Defendants Simpson and Rita Moore. The motion was granted. At the close of the Plaintiff's proof on the fourth day of trial **(# 149)**, the Defendants orally moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, and the Court granted that motion, entering judgment **(# 150)** in favor of the Defendants.

On January 7, 2008, the Defendants filed a proposed Bill of Costs **(# 155)**, seeking a total of $21,940.91 in taxable costs. On January 17, 2008, the Clerk of the Court taxed costs in the amount of $4,933.03. The bulk of the costs rejected consisted of more than $16,000 sought by the Defendants as "fees for witnesses," of which the Clerk taxes only $130. On January 22, 2008, the Defendants filed a timely motion seeking review **(# 159)** of the Clerk's decision, arguing: (i) that the Clerk should have taxed costs reflecting travel expenses for the two individual Defendants, for former Defendants Rita Moore and Simpson, who were dismissed

from the case on the first day of trial, and for several other witnesses who traveled from Arkansas but who were not required to testify after the Court entered judgment as a matter of law; (ii) that the Clerk should have taxed $422.33, reflecting the cost of obtaining the deposition transcript of the Plaintiff's expert, even though the Defendants did not use the transcript to impeach the expert during his testimony; and (iii) that the Clerk should have taxed $207.17, reflecting the cost of obtaining deposition transcripts of Defendants Rita Moore and Simpson, in that the transcripts were reviewed (*c.f.* used) in the Defendants' summary judgment response and were available for use at trial until the Plaintiff dismissed the claims against those Defendants on the morning of trial.

The Defendants also filed the instant Motion for Sanctions **(# 171)** pursuant to 28 U.S.C. § 1927. The Defendants' motion recites the procedural chronology of this case in some detail, including discussions between counsel that exist outside of the formal record in this case, and makes an omnibus request for sanctions, based on "Plaintiff's decision to continue to assert claims against individual Defendants" and "continuing to assert the defamation claim even after" rulings by the Court questioning the viability of that claim. However, other than through a generic chronology, the Defendants do not specifically identify which actions by the Plaintiffs they contend warrant sanctions.

## **ANALYSIS**

**A. Taxation of costs**

The power to grant costs is confined to the Court's discretion. *Marathon Ashland Pipeline, LLC v. Maryland Cas. Co.*, 243 F.3d 1232, 1254 (10th Cir. 2001). The burden of establishing entitlement to a certain item of costs is on the party seeking the award. *Allison v.*

*Bank One-Denver*, 289 F.3d 1223, 1248-49 (10th Cir. 2002). Taxation of costs is governed by 28 U.S.C. § 1920. Although the Clerk of the Court taxes costs in the first instance, this Court's review of the Clerk's decisions is *de novo*. *In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 461 (3d Cir. 2000);

The Court turns first to the Defendants' request for nearly $16,000 in travel costs for the individual Defendants, former Defendants, and certain witnesses. 28 U.S.C. § 1920(3) permits the Court to tax "fees and disbursements for printing and witnesses." Generally, § 1920(3) permits the taxation of the statutory witness fee and, when appropriate, travel costs for the witness to appear at the place of trial. *Karsian v. Inter-Regional Financial Group, Inc.*, 13 F.Supp.2d 1085, 1091-92 (D. Colo. 1998). The Clerk's rationale for refusing to tax most of the travel costs sought by the Defendants was the simple fact that only two of the eleven witnesses listed by the Defendants actually testified at trial.

It is undisputed that, of the witnesses for whom the Defendants seek costs, only two – Fanchon Gibson and John Drew – actually testified at trial, and the Defendants' Bill of Costs did not request mileage or other travel costs for these witnesses. Of the remaining nine witnesses for whom costs are sought, two – Defendant Stambaugh and Defendant Steve Moore – were parties to this action. As to the remaining seven witnesses, the Defendants seek daily attendance fees of $40 per witness for anywhere from one trial day (Kirby Moore) to four trial days (Sandra Simpson, Rita Moore). For witnesses for whom more than one day's attendance is sought, the Defendants also seek multiple days of subsistence payments at rates between $188 and $192 per witness per day, and travel costs – airfare or mileage for travel between Arkansas and Denver, totaling anywhere from $700 to $1,600 (and for Sandra Simpson, an additional $100 in cab fare).

With regard to the Defendants' request for travel and subsistence costs for Defendants Stambaugh and Steve Moore, the general rule is that parties are not entitled to witness fees. *Barber v. Ruth*, 7 F.3d 636, 646 (7th Cir. 1993), *citing* Wright, Miller et al., Federal Practice and Procedure (Civil 2d) § 2678. By extension, then, it would be inappropriate to tax costs relating to these parties under § 1920(3), which allows for the taxing of "fees [for] witnesses." As to the remaining witnesses, none of whom testified, the Defendants have not cited to any authority establishing the Court's ability to tax witness fees and costs for witnesses who are not actually called to testify, nor has the Court located any clear authority for that proposition.

The Defendants cite to *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1527 (10th Cir. 1997), for the proposition that they should not be punished for "prevailing early" in the litigation, but this is an overstating of *AeroTech*. In that case, the Court of Appeals found that the refusal to tax <u>any</u> costs in favor of a defendant who secured early dismissal from the litigation, in violation of the presumption that a prevailing party is entitled to its costs. *Id.* at 1526-27. Nothing in *AeroTech* suggests that a party who is dismissed prematurely from a case is nevertheless entitled to recoup costs for witnesses that were never presented.

Moreover, even assuming that the Court has the authority to tax costs for witnesses who did not testify, the Court would decline to do so in this case. With one exception, the Defendants seek at least three days of witness fees and subsistence costs for its witnesses, yet the Plaintiff's case was not completed until the fourth day of the trial, at which point the Court granted judgment to the Defendants. In other words, the Defendants summoned their witnesses well in advance of when they were necessary for presentation of the Defendants' case, and without regard to the possibility that the Court would grant the Defendants' Rule 50 motion. Although

7

the Court applauds the Defendants' belt-and-suspenders caution in ensuring that its witnesses would be available when needed, it would be inappropriate to lay the costs of the Defendants' peace of mind on the Plaintiff. The Defendants make a passing argument accusing the Plaintiff of prolonging his case-in-chief, and suggest that this delay caused the Defendants' witnesses to have to wait. The Defendants do not contend, however, that they attempted to confer with the Plaintiff about the pace and progress of his case, much less that the Plaintiff misled them into summoning their witnesses prematurely. Finally, the Court notes that the Plaintiff rested his case at approximately 1:45 p.m. on the fourth day of trial, that oral argument on the Rule 50 motion continued until 2:30 p.m., and that the Court's consideration of the motion and oral ruling was concluded at 4:00 p.m. Thus, at best, the Defendants were only required to have one hour's worth of witness testimony ready to fill the remainder of trial day four, and could have asked their remaining witnesses to begin their travel that evening or the following morning.[2] Accordingly, the Court finds that the Defendant has not shown that the various witness and travel fees were necessary, and the Court declines to tax any additional witness costs beyond those approved by the Clerk.

Next, the Court turns to the request for $422.33 for the transcript of witness John Drew's deposition. 28 U.S.C. § 1920(2) authorizes the taxation of "fees of the court reporter for all or any part of the stenographic transcript <u>necessarily obtained for use in the case</u>." (Emphasis

---

[2]Admittedly, asking witnesses to begin cross-country travel on such short notice presents a certain amount of imposition, but that imposition can hardly be any greater than the imposition of having the witness spend several days in a hotel away from home, awaiting the opportunity to testify. Moreover, the Court observes that, with Defendant Stambaugh and Simpson already present at the trial, the Defendants could have presented several hours of testimony to end trial day four and begin trial day five, allowing any remaining defense witnesses to begin their travel to Denver on the morning of trial day five.

added.) "Necessarily obtained," in this context, means that "the materials were used in the case and served a purpose beyond merely making the task of counsel and the trial judge easier." *Burton v. R.J. Reynolds Tobacco Co.*, 395 F.Supp.2d 1065, 1079 (D. Kan. 2005). Necessity is judged in the light of the facts known to the parties at the time the expense is incurred. *Id.*

Here, the Defendant concedes that it did not actually use Mr. Drew's deposition transcript at trial. However, they contend that they "were prepared to impeach Mr. Drew at trial were he to stray from his testimony in that deposition. He did not stray from such testimony, but the deposition was used in trial preparation and was prepared for use in trial had his testimony been different." The Defendants do not identify any facts that, at the time the transcript was obtained, suggested that Mr. Drew's trial testimony was likely to change, such that impeachment with his deposition would be necessary. At best, the Defendants have only established that they obtained Mr. Drew's deposition out of an unfounded abundance of caution.[3] This is insufficient to arise to the level of "necessarily obtained" sufficient to warrant the taxation of the costs of the deposition transcript. The Court also rejects the Defendants' argument that Mr. Drew's transcript was necessary to present the Defendants' successful Motion to Strike Mr. Drew's **(# 110)** wage loss opinions. That motion was premised on the improper designation of Mr. Drew as a rebuttal witness, not on the particular content of Mr. Drew's testimony. Accordingly, the Court declines to tax the costs of Mr. Drew's deposition.

Finally, the Defendants seek to tax the costs of obtaining deposition transcripts of Rita

---

[3]Taken to its logical extreme, <u>any</u> witness' trial testimony might vary from deposition testimony given by that witness. Thus, the Defendants' argument would suggest that <u>every</u> witness' deposition transcript would be "necessarily obtained" for use at trial, just in case it became necessary to impeach the witness.

9

More and Sandra Simpson. The Defendants implicitly acknowledge that the depositions were not used at trial (Ms. Moore and Ms. Simpson were never called to testify), but contend that because Ms. Moore and Ms. Simpson remained named as defendants until the Plaintiff voluntarily dismissed them on the first day of trial, "their depositions were an important part of this case." The Defendants also concede that the transcripts were not actually cited in conjunction with the Defendants' summary judgment motion, but that "they were certainly used in preparation of that motion and preparation for trial." At best, the Defendants have established that having the transcripts "ma[de] the task of counsel . . . easier," *Burton,* 395 F.Supp.2d at 1079*,* but the Court cannot find that they were "necessarily obtained" for use in this case.

Accordingly, the Defendants' Motion to Review Taxation of Costs is granted in part, insofar as the Court has reviewed the costs taxed by the Clerk, but denied in part, insofar as the Court declines to tax any additional costs.

### B. Motion for Sanctions

The Defendants request sanctions against the Plaintiff's counsel pursuant to 28 U.S.C. § 1927. That statute provides that "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." Sanctions under §1927 can be awarded even in the absence of a finding of bad faith. *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1202 (10th Cir. 2008). The Court's analysis focuses on the objective nature of the conduct, not the attorney's subjective intent. *Id.* (an attorney who acts with "an empty head and a pure heart" may be sanctioned). If the conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, it is sanctionable. *Id.*

Sanctions under § 1927 are not reserved for particularly "striking or egregious" conduct; they are imposed to compensate the victims of dilatory practices, not as a means of punishment. *Id.* at 1203. Thus, a showing of a "protracted course of vexatious conduct" is not necessary. *Id.*

In awarding sanctions, the Court must "state with specificity 'the excess costs providing a basis for the sanctions,' 'the conduct leading to the sanctions,' and 'the reason for the sanctions.'" *Id.* at 1204. Because the award of sanctions is compensatory, not punitive, the amount of a sanction should reflect the costs incurred as a result of the offending conduct, and it is not necessary that the court limit the amount of the sanction to the minimum amount necessary to punish or deter the offending attorney. *Hamilton*, 519 F.3d at 1205.

The Court's ability to specifically identify any vexatious conduct is somewhat complicated by the Defendants' failure to do so with precision. Rather than specifically pointing to any particular acts that they contend unnecessarily multiplied the costs of proceedings, the Defendants offer only a general chronology, freely mixing references to conduct that may be sanctionable with that which may not. The Court will not perform the Defendants' work, and will only examine those actions that which clearly stand out in the Defendants' recitation. Specifically, the Court considers: (i) the Plaintiff's failure to voluntarily dismiss the defamation claim against the individual defendants; and (ii) the Plaintiff's failure to timely dismiss the other claims against the individual defendants.

Turning first to the defamation claim, as recited above, the claim was asserted collectively against all Defendants as early as the original Complaint. On November 17, 2005, before they filed the Motion to Dismiss, the Defendants' counsel wrote to the Plaintiff's counsel, advising that "The decision . . . to lump all of the remaining individuals together as 'Defendants'

11

throughout the Complaint is not a proper way to plead a claim against an individual defendant. Accordingly, we intend to file a motion to dismiss the claims against the individuals." *Docket #* 17, Ex. A. This advisement notwithstanding, the Plaintiff failed to correct the deficiency, and the Defendants filed their intended motion. The Plaintiff's response **(# 29)** to that motion is revelatory:

> . . . plaintiff, to save [s]pace and avoid excessive repetition of those same seven names throughout the recitation of his claims for relief, . . . referenced [them] together as 'defendants.' In addition, plaintiff does not at this point have all of the information necessary for him to be able to determine in every specific instance exactly which defendants were involved, and which were not; that information is in the hands of the defendants, and will be sought during discovery. To punish plaintiff at this early date by dismissing his claims because he has not yet been able to perform discovery would be a gross miscarriage of justice.
>
> . . .
>
> . . . the reference to 'defendants' (plural) in plaintiff's claims for relief includes each of them, unless and until information, documents, witnesses and materials obtained during discovery prove they should not be.

In other words, the Plaintiff's counsel chose to name all of the individuals as defendants on (essentially) all of the claims, not because the Plaintiff had evidence – or even a good-faith belief – that the each individual engaged in unlawful conduct, but simply because the Plaintiff did <u>not</u> have evidence that the individuals were innocent. This is a fundamental violation of Fed. R. Civ. P. 11(b)(3) (and by extension, Rule 11(b)(2)), which deem the Plaintiff's counsel to represent that the factual contentions in the Complaint "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further

investigation."⁴ Not only is this an abrogation of counsel's Rule 11 obligations, but it is the very definition of vexatiousness: the claims against the individual defendants were stated not because the Plaintiff had a good-faith belief that each individual had committed a wrong, but as a "placeholder" to secure the individual's place in the litigation while the Plaintiff conducted a fishing expedition into each individual's conduct in the hopes that a wrong would be discovered.

The vexatious nature of the defamation claims against the individual defendants is further exemplified by the Plaintiff's counsel's subsequent conduct with regard to those claims. In the substantive response to the Motion to Dismiss, the Plaintiff defended the pleading of a claim of defamation against each of the individuals with two sentences: "Plaintiff did not identify which defamatory comments were made by which specific individuals in his complaint, as much of the information necessary to set this forth is in the possession of the defendants. Plaintiff hopes to be able to access such information during discovery." *Docket* # 29-2 at 5. Citing the generous standard of review that is afforded plaintiffs on Rule 12(b)(6) motions, the Court denied the Defendants' motion to dismiss the defamation claim, but expressly warned the Plaintiff that his "assertion that all four individual Defendants separately defamed him is an allegation subject to the strictures of Rule 11(b), and the Plaintiff may be subject to sanctions if he cannot demonstrate an informed, good-faith basis for asserting liability as to all four of the individuals." *Docket* # 71, n. 4.

On October 19, 2006, the Defendants wrote to the Plaintiff's counsel, requesting that the Plaintiff "dismiss his defamation claim immediately." The letter recited the Defendants' position

---

⁴The Court notes that none of the substantive allegations in any of the Plaintiff's various complaints allege facts based "upon information and belief," or otherwise "specifically so identify" those allegations that did not presently have evidentiary support.

13

as to the lack of any substantive support for that claim as against any defendant, and advised the Plaintiff's counsel that "we will attempt to collect sanctions from you and your client regarding this claim if it is not dismissed." *Docket* # 171, Ex. B. The Plaintiff's counsel's response to this letter, if any, is not contained in the record. On November 3, 2006, the Defendants again wrote to the Plaintiff's counsel, referencing counsel's statement at the Plaintiff's deposition that the defamation claim was intended to be asserted as against "FedEx and/or unknown employees." *Docket* # 171, Ex. C. Thus, it was clear that as of November 3, 2006, the Plaintiff's counsel herself was not prepared to represent that any of the particular individual defendants had defamed the Plaintiff. Any doubt on this issue is resolved by the Plaintiff's counsel's e-mail to defense counsel on December 5, 2006. There, the Plaintiff's counsel wrote "I will be considering whether it is really feasible to pursue the defamation claim. That was included rather more at my client's insistence, so I will have to have a 'come to Jesus' meeting with him on that." *Docket* # 171, Ex. D. Nevertheless, less than a month later, the Plaintiff filed the Third Amended Complaint that continued to assert the defamation claim, which, although captioned as being asserted against "FedEx Freight and/or unknown employees," specifically asserted that "Defendants, including but not limited to . . . Stambaugh, S. Moore and R. Moore intentionally made false statements about plaintiff." *Docket* # 96, ¶ 71.

The Defendants moved for summary judgment on all claims. The Plaintiff's response, as it relates to the defamation claim, was ambiguous. The response stated only that "Plaintiff requests that this court not issue summary adjudication . . . regarding Plaintiff's claim of Defamation <u>against Defendant FedEx Freight</u>." *Docket* # 103 at 9 (emphasis added). The response made no reference to the Plaintiff's assertion of the defamation claim against the

14

individual defendants.  The substantive response vaguely referenced a conversation between a Mr. Garland and an unknown representative of FedEx about the Plaintiff's employment, but the Plaintiff did not cite to any evidentiary material of any sort establishing any of the Plaintiff's contentions.  While the summary judgment motion was pending, the Plaintiff's counsel allegedly stated in a draft proposed Pretrial Order that she would "advise [the] Plaintiff" to withdraw the defamation claims.[5]  However, at no time did the Plaintiff's counsel expressly represent – to the Defendants or the Court – that the Plaintiff was actually dismissing or withdrawing his defamation claims.  The Court ultimately granted summary judgment to all Defendants on the defamation claim. *Docket* # 114 at 17.

Whether one reads this chronology as reflecting deliberate vexatious conduct on the part of the Plaintiff and his counsel in asserting and pressing claims which they knew lacked evidentiary support, or simply unfocused and lazy pleading of claims, the result is the same.  Viewed objectively, the Plaintiff's counsel pled and pursued defamation claims for which no good-faith basis existed.  More importantly, the Plaintiff's counsel's conduct was at least reckless, if not intentional, insofar as she was repeatedly advised by both the Defendants and the Court that her pleading was overbroad and her claims were not supported by the evidence, and yet the Plaintiff continued to defend and re-affirm those claims at every opportunity.  In fact, it is obvious from the Plaintiff's counsel's December 2006 e-mail that she agreed that the claims were defamation claims were deficient, but she was unable or unwilling to resist the instructions

---

[5]This draft is not part of the record in this case, and thus, the Court is unable to ascertain the accuracy of the Defendants' quoting of the Plaintiff's counsel's statement, or examine the context in which that statement is made.  The Court notes, however, that the Plaintiff's counsel's response to the motion for sanctions does not dispute the accuracy of the quote or suggest that it is somehow taken out of context.

of her client.[6] As a result, the Defendants were required to incur unnecessary costs in responding to the defamation claims against the individual defendants, to repeatedly correspond with the Plaintiff's counsel in an attempt to obtain the voluntary dismissal of the defective claims, to file dispositive motions against those claims, and to address those claims in the proposed Pretrial Order.

Accordingly, the Court finds that the Plaintiff's counsel's pleading and pursuit of the defamation claims against the individuals constituted vexatious conduct warranting sanctions under § 1927.

In her response to the Motion for Sanctions, the Plaintiff's counsel contends that "When presented with evidence by counsel for defendants showing that Plaintiff's slander claim was not well-founded in existing law, I agreed to stipulate to a dismissal of said claim. Any delay in formalizing that dismiss of said slander claim was due solely to inadvertence on my part." *Docket* # 173-2, ¶ 22, 23. As far as the record here reveals, that contention is false. There is no evidence in the record to indicate that the Plaintiff's counsel ever represented that she would dismiss the defamation claims. At best, the record reflects only that counsel would have a 'come to Jesus' meeting with her client in December 2006, in an attempt to persuade him to consent to dismissal of the claims. Obviously, this meeting was unsuccessful, as counsel thereafter filed a Third Amended Complaint continuing to assert defamation claims, and defended the validity of

---

[6]A client's insistence that counsel assert a frivolous claim is not a valid defense to sanctions against the attorney. *See Reichmann v. Neumann*, 553 F.Supp.2d 307, 325 (S.D.N.Y. 2008) ("A lawyer has a responsibility to examine the plausibility and supportability of the client's claims. Our legal system depends on lawyers, as officers of the court, to conduct reasonable inquiries before asserting claims"); Fed. R. Civ. P. 11(b)(1), (3) (attorney's signature is the attorney's own certification that he or she has conducted "an inquiry" into the matter and determined that the factual averments have or are likely to have evidentiary support).

those claims in response to the summary judgment motion. Months later, the Plaintiff's counsel stated that she would "advise" the Plaintiff to dismiss the claim, but this contention is little different from the position presented in counsel's December 2006 e-mail. In both instances, counsel expressed her own doubts about the defamation claims and proposed a meeting in which she would advise the Plaintiff to drop the claims, yet the claims were never dropped. Thus, the record before the Court is entirely inconsistent with counsel's assertion that she ever expressly agreed to dismiss the defamation claims, or that she undertook any effort, timely or otherwise, to effectuate such a dismissal.

Moreover, the Plaintiff's counsel does not offer any meaningful defense of her conduct in pleading the claim against the individual defendants in a patently overbroad manner, nor articulate any facts that would have justified her contention, as set forth in the response to the motion to dismiss, that a viable defamation claim was assertable against each individual defendant. Similarly, she fails to demonstrate a reasonable basis upon which she could re-assert the claims in the Third Amended Complaint, or defend them on summary judgment. As such, the Court finds that the Plaintiff has not come forward with any evidence or argument that would justify her conduct with regard to the defamation claims.

The Defendants' second argument in support of sanctions is somewhat less precise. The Defendants complain of the Plaintiff's naming of individual defendants generally, and the failure to timely dismiss those individuals in their entirety when evidence supporting individual claims failed to materialize. Other than generally reciting their position that the Plaintiff always lacked support for his claims against all of the individual defendants – and particularly, as against Bonita Lucky, who was voluntarily dismissed by the Plaintiff mid-way through the case, and as

17

against Sandra Simpson and Rita Moore, who were voluntarily dismissed by the Plaintiff on the first day of trial – the Defendants do not point to specific evidence that would demonstrate the vexatiousness of the Plaintiff's counsel's conduct, or otherwise clearly demonstrate an earlier date by which the individual claims should have been withdrawn. Accordingly, the Court declines to find that the Plaintiff's counsel's conduct regarding individual claims (other than the defamation claims) warrant sanctions under § 1927.

Thus, the Court turns to the question of what sanction should be imposed. As discussed above, the purpose of § 1927 is to compensate aggrieved parties, not to punish errant counsel. The Court has the discretion to select the method by which it calculates the appropriate sanction, but should focus on ascertaining the fees "reasonably incurred" by the Defendants as the result of the Plaintiff's counsel's improper conduct. *Hamilton*, 519 F.3d at 1206-07.

Within 10 days of the date of this Order, the Defendants shall file a statement of all fees claimed to have been reasonably incurred as a result of the Plaintiff's assertion of the defamation claim against the individual defendants, along with appropriate supporting evidence. The Plaintiff's counsel shall have 10 days from the date of the Defendants' filing to file any opposition to the amount of fees requested by the Defendants. No reply will be permitted.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion For Review of the Clerk's Taxation of Costs **(# 159)** is **GRANTED IN PART**, insofar as the Court has reviewed the costs taxed by the Clerk, and **DENIED IN PART**, insofar as the Court finds that no additional costs should be taxed. The Defendants' Motion for Sanctions **(# 171)** is **GRANTED IN PART**, insofar as the Court finds that the Plaintiff's pursuit of defamation claims against the individual defendants

18

was vexatious and warranting of sanctions under 28 U.S.C. § 1927, and **DENIED IN PART**, in all other respects. Within 10 days of the date of this Order, the Defendants shall file a statement of the attorney's fees and costs claimed to have been incurred as a result of the Plaintiff's defamation claims against the individual defendants, and the Plaintiff's counsel shall have 10 days from the date of that filing to be heard in opposition to the amount requested.

Dated this 5th day of August, 2008

                                              **BY THE COURT:**

                                              Marcia S. Krieger
                                              United States District Judge